IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| UNIVERSITY OF PITTSBURGH -- OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION,<br><br>        Plaintiff,<br>v.<br><br>COCHLEAR LIMITED, COCHLEAR AMERICAS, and COCHLEAR CLINICAL SERVICES, LLC,<br><br>        Defendants. | CIVIL ACTION NO. 6:21-CV-986<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiff University of Pittsburgh -- Of the Commonwealth System of Higher Education ("Pitt" or "Plaintiff") files this Original Complaint for Patent Infringement and Jury Demand against Defendants Cochlear Limited, Cochlear Americas, and Cochlear Clinical Services, LLC (collectively, "Defendants" or "Cochlear"). Pitt alleges infringement of United States Patent Number 8,421,274 (the "'274 Patent", or the "Asserted Patent") as follows:

### I. PARTIES

1. Plaintiff is a state-related university with its principal place of business in Pittsburgh, Pennsylvania. Pitt was founded in 1787 as a small, private school, known as the Pittsburgh Academy, which was located in a log cabin near Pittsburgh's three rivers. In the 234 years since, Pitt has evolved into an internationally recognized center of learning and research, including in the area of implantable medical devices. Pitt is one of the nation's top research universities and has worldwide patent and intellectual property rights resulting from the activities of its faculty, staff, and students, and from its commitment to support innovation. Pitt has over

2,300 worldwide patents, and over 1,350 U.S. patents in various fields. Pitt owns valuable intellectual property rights in this and other technology areas and is the assignee of the '274 Patent.

2. Defendant Cochlear Limited is an Australian company with an address at 1 University Avenue, Macquarie University, NSW, 2109, Australia.

3. Defendant Cochlear Americas is a Delaware corporation and is a United States wholly-owned subsidiary of Cochlear Limited. Cochlear Americas actively transacts business in Texas, maintains a regular and established place of business at 21 Spurs Lane, Suite 160, San Antonio, Texas 78240, and offers, sells, and uses infringing products at its Cochlear Hearing Center and through affiliated healthcare facilities and healthcare professionals in the Western District of Texas. Its registered agent for service is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

4. Defendant Cochlear Clinical Services, LLC is a Colorado limited liability company and is a wholly owned subsidiary of Cochlear Americas. Cochlear Clinical Services, LLC offers, sells, and uses infringing products in the Western District of Texas and maintains a regular and established place of business at 21 Spurs Lane, Suite 160, San Antonio, Texas 78240. Its registered agent for service is Corporation Service Company, which is located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## II. JURISDICTION

5. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the Western District of Texas has personal jurisdiction over Defendants because Defendants are present in and transact and conduct business in and with residents of this District and the State of Texas.

7. Pitt's causes of action arise, at least in part, from Defendants' contacts with and activities in this District and the State of Texas.

8. Defendants have committed acts of infringing the Asserted Patent within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas such infringing products. Defendants make, use, sell, offer for sale, ship, distribute, advertise, promote, and/or otherwise commercialize such infringing products in this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

### III. VENUE

9. Venue is proper in this District against Cochlear Limited because venue in a patent infringement action against a foreign defendant is proper in any judicial district. *Brunette Mach. Works, Ltd. v. Kochum Indus., Inc.*, 406 U.S. 706, 711–714 (1972); *see also In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018) (citing *Brunette Mach. Works*, 406 U.S. at 706).

10. Venue is proper in this District against Cochlear Americas and Cochlear Clinical Services, LLC because Cochlear Americas and Cochlear Clinical Services, LLC have a physical place located in the District that is a regular and established place of business, and that place belongs to Cochlear Americas and Cochlear Clinical Services, LLC. *See In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).

11. The Cochlear Hearing Center San Antonio is located at 21 Spurs Lane, Suite 160, San Antonio, Texas 78240. The Hearing Center has existed at this physical location since at least June 2015, as shown in Exhibit A, its Assumed Name Certificate.

12. The Cochlear Hearing Center San Antonio prominently features Cochlear branding inside the Center and on the Center's front door, as shown in the photograph below:



13. Cochlear Limited is the registered owner of the marks used at the physical location of the Cochlear Hearing Center San Antonio and displayed on the Cochlear Hearing Center San Antonio's website.

14. The Cochlear Hearing Center San Antonio is purportedly owned and operated by Cochlear Clinical Services, LLC, which is a wholly owned subsidiary of Cochlear Americas. *See*, Exhibit B, its 2019 Texas Franchise Tax Public Information Report. Cochlear Clinical Services, LLC conducts business in this District as an alter ego of Cochlear Americas.

15. The Cochlear Hearing Center San Antonio markets and sells Cochlear's infringing products. The Center's website explains that it offers patients "a wide variety of services to support implantable hearing solutions," including candidacy evaluations, initial activations of devices, interim programming, troubleshooting, equipment orientation, and "upgrades," which transition

patients "to a new device when external sound processors are upgraded to new technology." *See* https://www.cochlearhearingcenter.com/services.php.

16.     Cochlear Clinical Services, LLC's physical locations are only in Texas. Cochlear Clinical Services, LLC—as an alter ego and wholly owned subsidiary of Cochlear Americas—operates one Cochlear Hearing Center in San Antonio (located in the District) and another Hearing Center in Houston. The two Texas Cochlear Hearing Centers are the only Cochlear-branded and Cochlear-operated hearing centers in the United States.

17.     The Cochlear Hearing Center San Antonio is one of Cochlear Limited's international hubs. In Cochlear Limited's 2019 Strategy Overview, which is publicly available on Cochlear's website, San Antonio is one of the two U.S. cities where Cochlear has "Direct Operations" (*See*, Exhibit C, the 2019 Cochlear Limited Strategy Overview):



18.     The "Authorized Official" listed on Cochlear Clinical Services, LLC's National Provider Identifier Registry registration is Alyson Hunter, the Vice-President of Finance for Cochlear Americas, who also serves as the Controller and Treasurer of Cochlear Clinical Services,

LLC. *See*, Exhibit D, Provider Identifier Registry Entry. Cochlear Clinical Services, LLC's President and Chairman is Anthony Manna, who is also the President of Cochlear Americas. *See*, Exhibit B. And Cochlear Clinical Services, LLC's Secretary is Liza McKelvey, who is General Counsel and Vice-President of Cochlear Americas. *Id.*

19. Like the physical location of the Cochlear Hearing Center San Antonio, the website for Cochlear Hearing Center San Antonio prominently features Cochlear branding. *See* https://www.cochlearhearingcenter.com.

20. The website for the Cochlear Hearing Center San Antonio also provides links to download Cochlear Americas resources and forms, including (1) a "Cochlear Americas Audiologist Appointment Guide" that prominently features the Cochlear Americas heading, which patients must review and fill out before attending an appointment at the Cochlear Hearing Center San Antonio, (2) links to the Cochlear Americas "Hear and Now" blog posts and (3) a Cochlear Americas video titled "Top Myths About Cochlear Implants."

21. The Cochlear Hearing Center San Antonio website also promotes seamless integration with the Cochlear Americas website. Cochlear Limited is listed as the owner of the domain name for the Cochlear Hearing Center San Antonio website, https://www.cochlearhearingcenter.com.

22. Cochlear Limited is the registered owner of the Cochlear marks used at the Cochlear Hearing Center San Antonio's physical location and on the Cochlear Hearing Center San Antonio's website.

## IV. THE ASSERTED PATENT

**A.     United States Patent Number 8,421,274**

23. United States Patent Number 8,421,274 is titled "Wireless Energy Transfer System" and was filed on September 10, 2009. The '274 Patent claims priority to United States Patent Application Number 61/096,466, which was filed on September 12, 2008. A true and correct copy of the '274 Patent is attached as Exhibit E.

24. The '274 Patent claims patent-eligible subject matter and is valid and enforceable.

25. Claim 1 of the '274 Patent reads:

> A wireless energy transfer unit having at least one resonant frequency, comprising:
>
> an energy coupling/extraction coil; and
>
> a wireless energy transfer cell magnetically coupled to said energy coupling/extraction coil, said wireless energy transfer cell comprising an LC resonant tank including at least one insulator having a first surface and a second surface opposite said first surface, a spiral conductor coil provided on said first surface of said at least one insulator, and a plurality of non-spiral conductive strips provided, on said second surface of said at least one insulator, wherein said spiral conductor coil, said at least one insulator and said plurality of non-spiral conductive strips form at least one capacitor of said LC resonant tank.

26. Claim 3 of the '274 Patent reads:

> The wireless energy transfer unit according to claim 1, wherein said energy coupling/extraction coil comprises a plurality of loops.

27. Claim 4 of the '274 Patent reads:

> The wireless energy transfer unit according to claim 1, wherein each of said non-spiral conductive strips overlaps a plurality of turns of said spiral conductor coil.

28. Claim 5 of the '274 Patent reads:

> The wireless energy transfer unit according to claim 4, wherein said at least one insulator is a cylindrical insulator, wherein said conductor coil is a helical conductor coil.

29. Claim 7 of the '274 Patent reads:

   The wireless energy transfer unit according to claim 1, wherein said at least one insulator is a flat insulator, wherein said spiral conductor coil is a flat conductor coil and wherein each of said plurality of non-spiral conductive strips is a flat conductive strip.

30.  Claim 9 of the '274 Patent reads:

   The wireless energy transfer unit according to claim 7, wherein said spiral conductor coil is a circular spiral.

31.  Claim 23 of the '274 Patent reads:

   A wireless energy transfer unit having at least one resonant frequency, comprising:

     an energy coupling/extraction conductor; and

     a multi-layer cylindrical wireless energy transfer cell magnetically coupled to said energy coupling/extraction conductor, said multi-layer cylindrical wireless energy transfer cell comprising:

       an inner cylindrical insulator;

       a first spiral conductor coil provided on a surface of said inner cylindrical insulator;

       an insulator layer provided on top of said first spiral conductor coil; and

       a second spiral conductor coil provided on a surface of said insulator layer, said second spiral conductor coil being electrically connected to said first spiral conductor coil.

32.  Claim 27 of the '274 Patent reads:

   The wireless energy transfer unit according to claim 23, wherein said multi-layer cylindrical wireless energy transfer cell further comprises a ferrite core provided inside said inner cylindrical insulator.

33.  The '274 Patent's named inventors are Mingui Sun, Steven Hackworth, Robert Sclabassi, Fei Zhang, and Xiaoyu Liu.

34. The inventors conveyed to Pitt all rights, title, and interest in and to the invention of the '274 Patent and its underlying patent applications by written assignments recorded in the United States Patent and Trademark Office.

35. Pitt is the exclusive owner by assignment of all rights, title, and interest in the '274 Patent, including the right to bring this suit for damages, including the right to sue and recover all past, present and future damages for infringement of the '274 Patent.

36. Defendants are not licensed under the '274 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '274 Patent whatsoever.

## V. THE ACCUSED INSTRUMENTALITIES

37. Defendants manufacture, use, and sell infringing devices and products, including the Nucleus family of products (which comprises at least Nucleus CI612 implants, and Nucleus 6, Nucleus 7) (collectively, the "Accused Instrumentalities"), which practice the '274 Patent, including but not limited to Claims 1, 3, 4, 5, 7, 9, 23, and 27.

## VI. COUNT 1: DIRECT INFRINGEMENT

38. All previous paragraphs are incorporated herein as if fully set forth.

39. Defendants have directly infringed and continue to directly infringe the Asserted Patent under 35 U.S.C. §§ 271(a) and 271(g) by making, using, selling, offering to sell, and/or importing in or into the United States the Accused Instrumentalities that practice the Asserted Patent.

40. The Accused Instrumentalities directly infringe each element of at least Claims 9, 12, 13, and 16 of the '274 Patent, as further described in the claim charts attached as Exhibit F, which are incorporated by reference herein.

41. Upon information and belief, Defendants manufacture the Accused Instrumentalities at five sites internationally, including in Australia, China, Sweden, Malaysia, and the United States. Defendants market, sell, offer to sell, use, and/or import the Accused Instrumentalities in and into the United States.

42. Defendants market the Accused Instrumentalities to potential cochlear-implant patients through hearing screenings and "direct-to-consumer" marketing campaigns:

> Direct-to-consumer marketing builds awareness of cochlear implants directly with consumers.
>
> Cochlear started actively marketing directly to consumers in the US in 2011 as a way to build awareness of cochlear implants, and their indications. It has proven to be an effective way to identify highly motivated cochlear implant candidates seeking a better hearing solution to their high-powered hearing aids.
>
> DTC [Direct-to-Consumer] provides a clear pathway to care, linking candidates to surgeons, clinicians and recipient volunteers. It has become a meaningful contributor to sales in the US, with deeper penetration of over 65-year old adults demographic than other markets – 6% versus 3% in other developed markets.

Cochlear Limited 2020 Strategy Overview at 14.

43. Defendants also market the Accused Instrumentalities to surgeons and audiologists through the "Cochlear Provider Network" and an audiology practice-management software called "Sycle":

> The Cochlear Provider Network and Sycle aim to drive referrals from the hearing aid channel
>
> Cochlear has been actively building networks across the hearing aid channel in the US as a way to generate cochlear implant referrals. There are a number of reasons hearing aid audiologists have not traditionally referred patients on for cochlear implant assessments. . . . The Cochlear Provider Network (CPN) links surgeons with hearing aid clinics and today forms a small but growing part of our US business, with CPN surgeons currently growing at more than twice the rate of non-CPN surgeons.
>
> Sycle is an audiology practice management software business that Cochlear acquired in 2017. We are using the software, which reaches around 65% of the

hearing aid clinics in the US, to educate audiologists and incorporate cochlear implants into the standard workflow.

*Id.* at 15.

44. In addition to manufacturing, marketing, and selling the Accused Instrumentalities, Defendants use the Accused Instrumentalities by providing "services" for them. These services include activation, troubleshooting and calibrations, maintenance, as well as sales of upgrades to newer versions of infringing sound processors. In 2019, for example, Defendants had $427.2 million in sales revenue from sound-processor upgrades and other services. The 20% increase in 2019 was "driven by strong uptake of the Nucleus 7 Sound Processor." *See* Cochlear Limited 2019 Annual Report at 12.

## VII. COUNT 2: INDUCED INFRINGEMENT

45. All previous paragraphs are incorporated herein as if fully set forth.

46. Defendants have indirectly infringed and continue to indirectly infringe the Asserted Patent under 35 U.S.C. § 271(b) by taking active steps to induce, encourage, facilitate, aid, or otherwise cause direct infringement by others, including but not limited to surgeons, audiologists, clinicians, and cochlear implant patients.

47. Such active steps include, for example, advertising and marketing of the Accused Instrumentalities; publishing manuals and promotional literature describing and instructing users to utilize the Accused Instrumentalities; creating the "Cochlear Provider Network" to encourage surgeons, audiologists, and hearing-aid clinicians "to generate cochlear implant referrals"; distributing Defendants' "Sycle" audiology practice management software, "which reaches around 65% of the hearing aid clinics in the US" to educate audiologists and encourage hearing-aid clinics to recommend the Accused Instrumentalities to their patients; implementing a "Direct-to-Consumer" strategy of "actively marketing directly to consumers in the US" as a way to "build

awareness of cochlear implants" and create a "clear pathway to care, linking candidates to surgeons, clinicians and recipient volunteers"; and offering upgrades, maintenance, customer support, and technical assistance to the end-users of the Accused Instrumentalities.

48. Defendants have had notice and knowledge of the '274 Patent and their infringement thereof since at least February 2, 2021 as a result of Pitt's notice letter, subsequent discussions, and the filing of this Complaint. *See*, Exhibit G, Pitt's Notice Letter to Cochlear.

49. Defendants undertook and continue to undertake the above-identified active steps after receiving notice of the '274 Patent.

50. Further, upon information and belief, Defendants supply or cause to be supplied from Defendants' distribution facilities in Colorado, United States of America, all or a substantial portion of the components of the Accused Instrumentalities, uncombined in whole or in part, to locations outside the United States, including, but not limited to Canada.

51. Defendants have indirectly infringed and continue to indirectly infringe the Asserted Patent under 35 U.S.C. § 271(f)(1) by taking active steps to induce the combination of components of the Accused Instrumentalities outside the United States by others, including but not limited to surgeons, audiologists, clinicians, and cochlear implant patients, in a manner that would infringe the Asserted Patent if such combination occurred within the United States.

### VIII. COUNT 3: CONTRIBUTORY INFRINGEMENT

52. All previous paragraphs are incorporated herein as if fully set forth.

53. Defendants have indirectly infringed and continue to indirectly infringe the Asserted Patent under 35 U.S.C. § 271(c) by selling, offering to sell, and/or importing in or into the United States components of the Accused Instrumentalities that practice the Asserted Patent,

knowing said components are especially made or adapted for use in the Accused Instrumentalities and direct infringement of the Asserted Patent.

54. Said components constitute a material part of the invention of the Asserted Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

55. Such components include, for example, replacement parts, sound processors, and/or accessories especially made or adapted for use in Accused Instrumentalities (i.e. the Nucleus family of products).

56. Further, upon information and belief, Defendants supply or cause to be supplied from Defendants' distribution facilities in Colorado, United States of America, said components of the Accused Instrumentalities that practice the Asserted Patent, to locations outside the United States, including, but not limited to Canada, knowing said components are especially made or adapted for use in the Accused Instrumentalities and direct infringement of the Asserted Patent.

57. Defendants have indirectly infringed and continue to indirectly infringe the Asserted Patent under 35 U.S.C. § 271(f)(2) by supplying or causing to be supplied said components of the Accused Instrumentalities outside the United States intending that such components be combined outside the United States, in a manner that would infringe the Asserted Patent if such combination occurred within the United States.

## IX. JURY DEMAND

58. Plaintiff hereby demands a trial by jury for all causes of action.

## X. PRAYER FOR RELIEF

59. Plaintiff requests the following relief:

A. A judgment that Defendants have directly infringed either literally and/or under the doctrine of equivalents and continue to directly infringe the '274 Patent;

      B.      A judgment that Defendants have induced infringement of the '274 Patent;

      C.      A judgment that Defendants have contributorily infringed the '274 Patent;

      D.      A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

      E.      A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

      F.      A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

      G.      A judgment and order awarding a compulsory ongoing royalty;

      H.      A judgment and order awarding Plaintiff costs associated with bringing this action; and

      I.      Such other and further relief as the Court deems just and equitable.

Dated: September 23, 2021                Respectfully submitted,

                                        By:  /s/ *Charles Ainsworth*
                                               Alfonso G. Chan (Texas 24012408)
                                             Michael W. Shore (Texas 18294915)
                                             Samuel E. Joyner (Texas 24036865)
                                             Ari B. Rafilson (Texas 24060456)
                                             Corey M. Lipschutz (Texas 24099303)
                                             SHORE CHAN LLP
                                             901 Main Street, Suite 3300
                                             Dallas, Texas 75202
                                             Tel: (214) 593-9110
                                             Fax: (214) 593-9111
                                             achan@shorechan.com
                                             sjoyner@shorechan.com
                                             arafilson@shorechan.com
                                             clipschutz@shorechan.com

Brian D. Melton (Texas 24010620)
John P. Lahad (Texas 24068095)
Ace M. Factor (Texas 24118923)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
afactor@susmangodfrey.com

Charles Ainsworth (Texas 00783521)
Robert Christopher Bunt (Texas 00787165)
PARKER, BUNT & AINSWORTH PC
100 E. Ferguson, Suite 418
Tyler, Texas 75702
(903) 531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF UNIVERSITY OF PITTSBURGH -- OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION**